

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-1999

# Kunin v. Sears Roebuck & Co

Precedential or Non-Precedential:

Docket 98-1481

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Kunin v. Sears Roebuck & Co" (1999). *1999 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1481

KAREN A. KUNIN

v.

SEARS ROEBUCK AND CO.,

      Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable Clarence C. Newcomer
(D.C. Civ. No. 97-04580)

Argued March 26, 1999

BEFORE: GREENBERG, ROTH, and ROSENN,
Circuit Judges

(Filed: April 28, 1999)

        Timothy M. Kolman
        Wayne E. Ely (argued)
        Timothy M. Kolman and
        Associates
        225 North Flowers Mill Road
        Langhorne, PA 19047

        Attorneys for Appellee

            L. Rostaing Tharaud (argued)
            Marshall, Dennehey, Warner,
            Coleman & Goggin
            1845 Walnut Street
            Philadelphia, PA 19103

             Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This case requires us to consider the scope of respondeat
superior liability for hostile work environment claims
brought under Title VII of the Civil Rights Act of 1964, 42
U.S.C. S 2000e-2(a)(1). Karen Kunin, an employee at Sears
Roebuck & Co., alleged that a co-worker had harassed her
over a three-week period by using sexually derogatory
language. Kunin did not report the harassment, however, to
Sears' management until the end of the period, and instead
during the period only asked her supervisor the general
question of whether "cursing" was permitted in the
workplace. Because we conclude that an employee provides
notice to the employer only when he or she complains
about sexually offensive conduct, and because Sears had
neither actual nor constructive notice of the harassment
until the end of the three-week period, we will reverse the
district court's denial of Sears' motion for judgment as a
matter of law and will remand for entry of judgment in
Sears' favor.

The district court had federal question jurisdiction over
Kunin's Title VII sexual harassment claim against Sears
under 28 U.S.C. S 1331 and 42 U.S.C. S 2000e-5(f)(3).
Because the district court entered final judgment after a
jury verdict, we have jurisdiction under 28 U.S.C.S 1291.

II. FACTUAL AND PROCEDURAL HISTORY

A. Factual History

Kunin worked as a salesperson for Sears at its Neshaminy Mall store in Bensalem, Pennsylvania, from 1987 to 1996. This lawsuit arises from alleged sexual harassment that Kunin experienced at that store from a fellow employee, Randy Lodato.

In March 1996, Sears transferred Kunin, at her request, to its division 26/46, major appliances. Approximately one month later, on April 28, Lodato began to work in the same department, where Kunin was the only woman. Kunin quickly began to experience problems working with Lodato because of his regular use of profanity, which included directing the term "fucking bitch" at her personally. She testified at trial that Lodato used vulgar language on every occasion that she worked with him and was unresponsive to her requests to stop his offensive conduct. In one instance, Lodato responded to Kunin's complaints by stating that she "must be virgin ears" and would have to grow accustomed to his language or return to her previous department. Kunin's fellow employees confirmed at trial that Lodato regularly used profanity, and that they had witnessed him direct the profanity, including the term "fucking bitch," at Kunin.

Because of Lodato's unresponsiveness, Kunin took the opportunity to speak with a supervisor in early May. With Lodato following her, Kunin approached her supervisor, George Kerper, while he was on the sales floor of her department and asked: "is cursing allowed on the sales floor?" Kerper, who was working on a computer at the time, replied "no," but asked no follow up questions and turned his back to Kunin. At that time, Kunin did not inform Kerper specifically that Lodato was using vulgar language that offended her.

The conflict between Kunin and Lodato came to a head on May 18, 1996, less than two weeks after Kunin had approached Kerper on the sales floor. Kunin testified that on that day Lodato yelled at her to stop approaching the customers in their department, even though she regularly had observed male employees doing so. After this

3

disagreement, Kunin witnessed Lodato gesturing to their fellow employees. When she inquired about what had been said, she learned that Lodato had referred to her as a "fucking bitch and dumb cunt." Refusing to ignore such conduct, Kunin approached Lodato and informed him that she would not be intimidated. After Lodato continued to curse her, she paged supervisor Kerper and asked him to come to the sales floor. Kerper and Kunin went outside the store where Kunin informed him of the demeaning language that Lodato had directed at her and asked Kerper "to stop it now." Kerper replied that the store manager, Robert Dugan, who would not return for two days, would have to address the situation. Upon entering the store, however, Kerper instructed Lodato to stay away from Kunin, an instruction that Lodato followed.

Shortly after her discussion with Kerper, Kunin's shift ended and she prepared to leave the store. Unexpectedly, however, on her way out she encountered her boyfriend, David Eldridge, and his adult son. She recounted the day's events to Eldridge, and they then proceeded through the store to his truck, which was parked outside. As they passed through Kunin's department, Eldridge approached a group of male employees and, after asking who was Lodato, jabbed Lodato in the shoulder. A screaming match then ensued, and eventually store employees summoned both store security and the police. One of the employees that witnessed the incident testified at trial that Kunin had a smile on her face when Eldridge confronted Lodato.

After investigating the May 18 incident, Sears terminated Lodato and Kunin and issued a reprimand to Kerper. Sears fired Lodato because he admitted to using improper language in the workplace, and terminated Kunin because of her "failure to discourage a situation that led to physical violence and threats of violence directed at Randy Lodato." Kerper's reprimand faulted him for failing to deal with the situation between Lodato and Kunin "in a decisive manner," thus causing it to "flare up." Believing that she had suffered sexual harassment and that Sears had fired her because of her complaints about such treatment, Kunin filed suit in

4

the district court on July 14, 1997, alleging that Sears had violated Title VII.[1]

B. Procedural History

After discovery, Sears moved for summary judgment on Kunin's sexual harassment and retaliation claims, but the district court denied its motion on December 5, 1997. Although stating that the evidence supporting Kunin's claims did not appear "overwhelming," the court found that because many of the issues boiled down to "he said, she said" disputes, the entry of summary judgment was inappropriate.[2]

The case was tried to a jury on December 8, 9, and 10, 1997. At the end of Kunin's case and at the end of all of the evidence, Sears unsuccessfully moved for a judgment as a matter of law. At the close of the trial, the jury returned a verdict in Kunin's favor on the sexual harassment claim and awarded her $38,000 for pain and suffering. Although it found in Sears' favor on the retaliation claim, the jury nevertheless awarded Kunin $75,000 in front pay damages.

Sears filed post-trial motions renewing its request for a judgment as a matter of law, or in the alternative, a new trial with respect to the sexual harassment verdict and the damages award. In particular, it argued that Kunin had failed to establish the elements of a sexual harassment claim and that the jury's award of front pay was inconsistent with its conclusion that Sears did not retaliate against Kunin in terminating her. The district court again denied Sears' motions, stating first that viewing the evidence in the light most favorable to Kunin, it found that she had established every element of a sexual harassment

---

1. Kunin's complaint included other claims of sex discrimination, such as the allegation that Sears had assigned to its female employees lower paying jobs than it had assigned to its male employees. During a pre-trial hearing, however, Kunin stated that she would pursue only the claims that Lodato had sexually harassed her and that Sears had fired her in retaliation for reporting such harassment.

2. Sears' appeal includes the claim that the district court erred in not granting it summary judgment. Even if we could consider that argument, we have no reason to do so.

claim. Next, the court stated that it was an issue of first impression in this circuit whether a plaintiff who had been discharged, rather than constructively discharged, could recover front pay where a jury found sexual harassment but not retaliatory discharge. The court upheld the front pay award for two reasons. First, it stated that the award showed that the jury had "found a causal connection between the defendant's wrongful conduct and plaintiff's discharge, despite its finding of no retaliation." Although finding the causal link "somewhat attenuated," the court noted that "[a] defendant is generally liable for all harm flowing from its wrongful conduct," and that it was "unaware of any rule of law precluding an award of damages where the but-for causes of a discharge were multifactorial." Second, the court found that it would be "contrary to the purposes of Title VII to hold that a plaintiff who is discharged because of circumstances arising out of sexual harassment cannot collect front pay damages, whereas a plaintiff who walks out of her job can be awarded such damages." Based on its reasons for upholding the front pay award, the court then also granted Kunin's motion for back pay in the amount of $46,741.42.

Sears appeals, raising three alleged errors. First, it argues that it was entitled to judgment as a matter of law on Kunin's sexual harassment claim because the evidence, even when viewed in the light most favorable to Kunin, failed to establish "regular and pervasive" harassment and respondeat superior liability on Sears' part. Second, it claims that awards of front and back pay are unfounded legally where a jury concludes that an employer did not act based on a discriminatory motive in firing the employee. Finally, Sears contends that the district court erred in admitting evidence of previous complaints Kunin made to Sears management about issues unrelated to her sexual harassment claims. Because we find Sears' argument that Kunin failed to prove respondeat superior liability compelling, we do not address its other assertions.3

_____

3. Our failure to discuss these other claims should not be interpreted as in any way reflecting our judgment about their merit.

6

## III. DISCUSSION[4]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. S 2000e-2(a)(1). It is well established that a plaintiff can demonstrate a violation of Title VII by proving that sexual harassment created a hostile or abusive work environment. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405 (1986).

According to our precedent, to succeed in a sexual harassment claim based on a hostile work environment, the plaintiff must show five elements:

> (1) the employee[ ] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).[5] The district court instructed the jury pursuant to this standard and the parties do not question that this standard applies to this case. The central dispute in this appeal concerns the fifth factor in the Andrews test, the existence of respondeat superior liability.

_____

4. We review under a plenary standard Sears' claim that the district court erred in denying it judgment as a matter of law after the trial, viewing the evidence in the light most favorable to Kunin in order to determine whether there was "insufficient evidence from which a jury reasonably could find liability." Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 149 (3d Cir. 1998).

5. In Williamson v. City of Houston, 148 F.3d 462, 465 (5th Cir. 1998), the court pointed out that an employer's liability for co-workers' sexual harassment is direct not vicarious so that the use of the term "respondeat superior" in such a case may not be appropriate. We need not pursue this point as "respondeat superior" in the context here connotes notice to the employer and we decide the case on that basis.

7

An employer is not always liable for a hostile work environment. Instead, under Andrews, "liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." 895 F.2d at 1486 (citations omitted). Although the evidence establishes that Kunin provided notice of harassment, be it sexual or not, to supervisor Kerper on May 18, 1996, 6 this notice did not establish respondeat superior liability because Kerper took effective action as he instructed Lodato to stay away from Kunin who experienced no further harassment from Lodato. Our precedents provide that when an employer's response stops harassment, there cannot be Title VII liability. See Bouton v. BMW of N. America, Inc., 29 F.3d 103, 110 (3d Cir. 1994) ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective."). Thus, Sears will be liable to Kunin only if she can establish that Sears had notice of harassment prior to May 18 and yet failed to take adequate steps to stop it.

Kunin argues that by asking Kerper in early May whether "cursing was allowed on the sales floor," she provided Sears management with notice of sexual harassment. Because Kunin did not complain specifically that Lodato, or any employee, was harassing her, her interaction with Kerper does not constitute actual notice to Sears. The question posed, therefore, is whether Kunin's query to Kerper was sufficient to place him and thus Sears on constructive notice of the harassment.

The Court of Appeals for the Fifth Circuit has stated that "the type and extent of notice necessary to impose liability on an employer under Title VII are the subject of some uncertainty." Williamson v. City of Houston, 148 F.3d 462, 465 (5th Cir. 1998) (citations omitted). Indeed, our research has revealed a limited number of cases interpreting the doctrine of constructive notice as it relates to sexual harassment claims. These cases suggest that there can be constructive notice in two situations: where an employee provides management level personnel with enough information to raise a probability of sexual harassment in

_____

6. Sears has not questioned in this case that notice to Kunin's supervisor, Kerper, would have constituted notice to Sears itself.

8

the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it. See, e.g., Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1018-19 (7th Cir. 1996). We believe that these standards strike the correct balance between protecting the rights of the employee and the employer by faulting the employer for turning a blind eye to overt signs of harassment but not requiring it to attain a level of omniscience, in the absence of actual notice, about all misconduct that may occur in the workplace. The proof offered by Kunin in this case falls short of these standards.

Standing alone, Kunin's interaction with Kerper in early May was not enough to place him on notice that there was a reasonable probability of sexual harassment. Although Kunin's question arguably suggested that she was having difficulty with a fellow employee's language, her use of the word "cursing" did not communicate that the offensive language had sexual overtones. Courts have found that when employees' complaints do not refer to sexually offensive behavior, employers are not on constructive notice of sexual harassment. See, e.g., Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 250 (2d Cir. 1995) (ruling that dental student's complaint to supervising doctor that a clinic patient was "staring at [her] and trying to get her attention," was insufficient to put university on notice under Title IX that student was being sexually harassed because it did not inform the university's agent that the patient's conduct was of "an ongoing sexually offensive nature."); Schiraldi v. Ampco Sys. Parking, 9 F. Supp.2d 213, 216, 220 (W.D.N.Y. 1998) (holding that employee's complaints that co-worker "wouldn't leave her alone" and called her "names" were insufficient to provide employer with constructive notice because "they gave no indication that [the offensive] actions were in any way sexual").

Kunin argues, however, that her interaction with Kerper in early May was not the only indication that Lodato was posing a problem for her. Instead, she points out that Kerper admitted at trial that he had heard rumors about offensive language in his department but never had investigated them. This argument encounters the same

9

obstacle as Kunin's preceding claim: there is simply no evidence that Kerper had knowledge that the rude language was gender-specific.

Moving to the second type of situation that can support a finding of constructive notice, we now consider whether the harassment alleged by Kunin was so open and pervasive that a reasonable employer could not have been ignorant of it. See Zimmerman, 96 F.3d at 1018-19. In analyzing the pervasiveness of the alleged harassment, we note first and foremost that the harassment occurred over a short time, from April 28, when Lodato first began working with Kunin, to May 18, the day of Lodato's altercation with Kunin's boyfriend. Further, it is clear from the record that Kunin and Lodato did not work together every day during these key three weeks; instead, they would have interacted only on days that their shifts overlapped. Thus, because of this short time period and the limited number of interactions between Lodato and Kunin, Sears' management had little opportunity to discover the harassment absent Kunin's giving the company actual notice. Cf. Hall v. Gus Constr. Co., 842 F.2d 1010, 1016, 1018 (8th Cir. 1988) (finding that even if supervisor was not aware of all sexual abuse, "unrelenting pattern of verbal, physical and psychic abuse" involved incidents"so numerous" that employer was "liable for failing to discover what was going on and to take remedial steps to put an end to it").

Moreover, the harassment in this case was not of the kind that would have been easily discoverable by Sears' management. Lodato had not posted demeaning images or statements about women for all to see. Cf. Lipsett v. University of Puerto Rico, 864 F.2d 881, 888, 906 n.25 (1st Cir. 1988) (finding notice possible in suit brought under Title IX and 42 U.S.C. S 1983 where male surgical residents had posted Playboy centerfolds in location where all residents ate their meals). Instead, he made derogatory remarks to Kunin personally, apparently at times when management was not within hearing range. Although we in no way mean to condone Lodato's conduct, we simply cannot find that Sears is liable in the circumstances here. Given the brief time period in which Kunin and Lodato

10

worked together, the limited number of instances that the offensive conduct could have occurred, and the fleeting nature of derogatory language, Sears reasonably failed to discover the harassment alleged by Kunin. Because Kunin cannot show respondeat superior liability, the fifth factor in the Andrews test, her sexual harassment claim against Sears must fail.

IV. CONCLUSION

We will reverse the district court's denial of judgment as a matter of law to Sears on Kunin's sexual harassment claim as well as the judgment for all monetary damages, and we will remand the case to the district court with directions to vacate the judgment in Kunin's favor and enter judgment as a matter of law in Sears' favor.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11