Vivian J. Gerhart KENT, Plaintiff,

v.

William J. HENDERSON, Postmaster
General, United States Postal
Service, Defendant.

Civil Action No. 99–1585.

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1999.

Robin J. Gray, Renner Clark Buckwalter & Voltz, Wayne, PA, for plaintiff.

Karen L. Tomlinson, U.S. Attorney's Office, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This case involves a claim of sex discrimination against the United States Postal Service brought under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act (PHRA). Plaintiff claims that her supervisor and co-workers created a hostile work environment while she was employed by defendant as a postal worker at the Kutztown and Hamburg, Pennsylvania Post Offices. Plaintiff claims

that defendant is vicariously liable for the conduct of the supervisor and co-workers who created the hostile environment. Defendant denies that the person charged with the sexual harassment at the Kutztown Post Office was plaintiff's supervisor. Rather, defendant claims that the conduct at issue was undertaken by one of plaintiff's co-workers. Further, defendant argues that since it took prompt remedial action to stop the harassment upon learning of plaintiff's complaint, it cannot be held vicariously liable for the conduct of plaintiff's co-worker. Regarding plaintiff's employment at the Hamburg Post Office, defendant argues that the conduct of which plaintiff complains is not sufficient to constitute sexual harassment because it was not sexually offensive or suggestive and plaintiff can not show that it was motivated by her sex. The case is before the court on defendant's motion for summary judgment as to all of plaintiff's claims. For the following reasons, defendant's motion will be granted.

## I. FACTS

The following facts are uncontested or viewed in the light most favorable to plaintiff. Beginning on or about November 1, 1995, while employed at the Kutztown Post Office, plaintiff was subjected to several unwelcomed sexual advances by Mr. Jay Wentzel, another employee at the Kutztown Post Office. (Pl.'s Aff., p. 1). These advances included Mr. Wentzel's rubbing plaintiff's back, forcing food into plaintiff's mouth, placing his hand under plaintiff's shirt, placing his hands inside the back of plaintiff's pants, pulling plaintiff toward him in attempts to kiss her, placing unwanted gifts and cards in plaintiff's car, and generally harassing plaintiff. (Pl.'s Aff., p. 1). In fact, Mr. Wentzel ultimately entered the Berks County Accelerated Rehabilitative Disposition Program on charges of stalking and harassing plaintiff. (Pl.'s Resp., Ex. B).

After these unwanted sexual advances occurred, plaintiff reported Mr. Wentzel's conduct to her immediate supervisor, Postmaster Robert Sarnoski. (Pl.'s Aff., p. 1).

As a result of plaintiff's report and because of his conduct toward plaintiff, Mr. Wentzel was suspended for one week. (Def.'s Mem., Ex. 7). Also, thereafter, the postal authorities arranged both plaintiff's and Mr. Wentzel's work schedules to ensure that they both were not physically present in the post office at the same time. (Pl.'s Aff., p. 2).

On January 20, 1996, approximately two to three months after Mr. Wentzel's alleged sexual advancements, Mr. Wentzel's son and another man confronted plaintiff while she was delivering mail. The unidentified man "made an angry face at [her], raised his fist and shook it at [her]." (Pl.'s Aff., p. 2). On February 2, 1996, plaintiff reported to work and was informed by a clerk that Mr. Wentzel had telephoned and asked why plaintiff's car was at the post office. (Pl.'s Aff., p. 2). In addition, on February 3, 1996, plaintiff was delivering mail after a particularly heavy snowfall when she noticed tire tracks at each mailbox along her route. (Pl.'s Aff., p. 2). According to plaintiff, she took these tracks as an indication that "Mr. Wentzel was letting [her] know that he had been there, by driving the route before [her]." (Pl.'s Aff., p. 2). Plaintiff notified the postal authorities of each of these incidents, but the postal authorities took no action. (Pl.'s Aff., p. 3).

Due to the stress caused by Mr. Wentzel's sexual harassment and by these three post-harassment incidents, plaintiff requested and was granted a transfer to the Hamburg Post Office. While at the Hamburg Post Office, plaintiff became aware that her co-workers knew of her reasons for leaving the Kutztown Post Office. (Pl.'s Aff., p. 3). In fact, plaintiff heard other employees make statements to the effect that "they better watch what they say or they might get in trouble for sexual harassment." (Pl.'s Aff., p. 3). While employed at the Hamburg Post Office, plaintiff was "treated like an outcast" and generally ignored by her co-workers. (Pl.'s Aff., p. 3).

Plaintiff's claims raise three principal issues. The first is whether Mr. Wentzel was plaintiff's supervisor. The second is whether defendant took prompt remedial action to stop Mr. Wentzel's harassment after learning of plaintiff's complaint. The third is whether Mr. Wentzel's conduct during the alleged incidents of January 20, 1996, February 2, 1996, and February 3, 1996 and the conduct of plaintiff's co-workers while she was assigned to the Hamburg Post Office constituted discrimination because of plaintiff's sex.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing suffi-

cient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

### A. *Title VII and PHRA Hostile Environment Claims*

#### 1. *Employer hostile environment liability*

 A female plaintiff alleging that sexual harassment created an abusive or hostile working environment must show by the totality of the circumstances that a hostile or abusive working environment exists "which is severe enough to affect the psychological stability of a [female] employee." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990) (quoting *Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1510 (11th Cir. 1989)). In order to prove a hostile work environment, plaintiff must show (1) that she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999)(*citing Andrews,* 895 F.2d at 1482).[1]

 An employer is not always vicariously liable for a hostile work environment. *Kunin,* 175 F.3d at 293. Rather,

1. Plaintiff's hostile environment claims are examined solely under Title VII in light of the fact that the Pennsylvania Human Relations Act and Title VII are construed to be consistently interpreted. *See Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996)(noting that while PA courts are not bound to construe PHRA consistent with Title VII, they generally do so); *Gomez v. Allegheny Health Services, Inc.,* 71 F.3d 1079, 1084 (3d Cir. 1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct.

2524, 135 L.Ed.2d 1049 (1996)(providing that PHRA is construed consistent with interpretation of Title VII); *Clark v. Commonwealth of Pa.,* 885 F.Supp. 694, 714 (E.D.Pa.1995) ("The courts have uniformly held that the PHRA should be interpreted consistent with Title VII."); *Glickstein v. Neshaminy School District,* 1999 WL 58578, *6 (E.D.Pa. Jan.26, 1999)(Hutton, J.)("Federal courts have uniformly held that the PHRA should be interpreted consistently with Title VII.")

liability depends upon whether the person charged with creating the hostile environment is the plaintiff's "supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998). If he is, the employer will be ultimately liable for the supervisor's conduct, provided that the supervisor took "tangible employment action" against the employee. *Id.* 118 S.Ct. at 2293. "Tangible employment action" includes employment related actions such as "discharge, demotion, or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher,* 118 S.Ct. at 2293. However, if the supervisor charged with creating the hostile environment did not take "tangible employment action" against the employee, the employer may raise as an affirmative defense to liability the fact that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior ... and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise...." *Durham Life Insurance Co. v. Evans,* 166 F.3d 139, 150 (3d Cir.1999)(*quoting Ellerth,* 118 S.Ct. at 2270).

██ On the other hand, if the person charged with creating the hostile environment is the claimant's co-worker, and not a supervisor, "liability exists [only] where the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Kunin,* 175 F.3d at 293 (*citing Andrews,* 895 F.2d at 1486) (citations omitted in original). "Prompt remedial action" is conduct "reasonably calculated to prevent further harassment." *Bonenberger v. Plymouth Township,* 132 F.3d 20, 26 (3d Cir.1997)(*citing Knabe v. Boury Corp.,* 114 F.3d 407, 412 (3d Cir. 1997)).

2. *Standard for determining whether the person committing the harassment is a supervisor or coworker*

Neither *Faragher* nor *Ellerth,* the Supreme Court's latest pronouncements on sexual hostile environment liability, expressly defined the term supervisor for purposes of determining an employer's liability for a hostile work environment. In *Faragher,* the Court noted that the power to supervise includes the authority "to hire and fire, and to set work schedules and pay rates...." *Faragher,* 118 S.Ct. at 2291.[2] *Ellerth* indicated that a supervisor with the power to take "tangible employment action" affecting another employee is one who could trigger "a significant change in [the employee's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 118 S.Ct. at 2269.[3] In turn, the

---

**2.** It should be noted that since the Court was not faced with the question of whether those individuals responsible for the hostile environment were in fact supervisors, this insight was not necessary to its analysis. It is, however, useful to point out that the individuals identified as supervisors in *Faragher* possessed "virtually unchecked authority" over their subordinates and "directly control[ed] and supervis[ed] all aspects of [Faragher's] day-to-day activities." *Faragher,* 118 S.Ct. at 2293.

**3.** Judge Robert Kelly recently approved a jury instruction permitting consideration of many of the same factors in determining whether an individual is the plaintiff's supervisor. The charge instructed the jury that it could:

[t]ake into consideration whether Dr. Jones had immediate authority over the Plaintiffs as their department chairman, whether Dr. Jones had direct ability to influence hiring and firing decisions, whether Dr. Jones had authority to influence Plaintiffs' work schedules, whether Dr. Jones could evaluate Plaintiffs. Also, you should consider whether Dr. Jones ... could effect a significant change in [the Plaintiffs'] employment status such as firing, hiring, failing to promote, a reassignment with ... significantly different responsibilities.

*Gentner v. Cheyney University of Pennsylvania,* 1999 WL 820864, *18 (E.D.Pa. Oct.14, 1999)(Kelly, J.).

Third Circuit has explained that the authority to act alone on the employer's behalf, with no other controls, is not required for an employee to possess supervisory authority. *Durham Life,* 166 F.3d at 154–55.[4]

In the aftermath of *Faragher* and *Ellerth,* the EEOC has defined an employee's supervisor "[as] (1) the individual [who] has authority to undertake or recommend tangible employment decisions affecting the employee, or (2) the individual [who] has authority to direct the employee's daily work activities."[5]

Recently, in synthesizing these authorities, Judge Hutton found helpful the following Seventh Circuit formulation:

> Hence it is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing [sic] liability to the employer.[6]

With these teachings in mind, the court turns to Mr. Wentzel's employment status.

### 3. *Was Mr. Wentzel plaintiff's supervisor or co-worker?*

■ Plaintiff claims that "Mr. Wentzel falls under the category of her supervisor as she was his sub[stitute] and he set the schedule and let her know when she would be coming to work. He also monitored and evaluated her work and gave her feedback if warranted." (Pl.'s Resp., p. 7). None of these claims is supported by affidavit, deposition testimony, or other citation to the record.

In response, defendant argues that the position held by Mr. Wentzel was not a supervisory position, but rather Mr. Wentzel performed the job of rural carrier. Defendant asserts that the pay grade assigned to Mr. Wentzel was not a supervisory pay grade, that rural carriers are not authorized under the relevant regulations to hire or fire or recommend hiring or firing of their substitutes, and rural carriers do not participate in the hiring process of their substitutes. Unlike plaintiff's proffer, defendant's arguments are supported by the uncontroverted affidavit of the Hamburg Post Office Postmaster. (Def.'s Mem., Ex. 18). Moreover, by plaintiff's own admission, her supervisor at the Kutztown Post Office was Robert Sarnoski, the Kutztown Postmaster, and not Mr. Wentzel. (Pl.'s Resp., p. 2–3). In fact, plaintiff's own affidavit of July 21, 1997, refers to Mr. Wentzel as "an employee [not a supervisor] from the Kutztown Post Office." (Def.'s Mem., Ex. 5).

Finally, in her sworn testimony before an administrative judge in the earlier stages of the litigation of this matter, plaintiff stated that Mr. Wentzel was not "the management who gives you the days to your schedule." Rather, plaintiff indicated that John Wentzel was "the man I sub for . . . ." (Def.'s Mem., Ex. 17).

The burden of proof to show that Mr. Wentzel was plaintiff's supervisor lies with plaintiff. *Andrews,* 895 F.2d at 1482 (explaining that plaintiff must establish employer liability as element of hostile environment claim). As the party with the burden of proof, plaintiff must show, at this stage of the proceedings, the existence of a genuine issue of material fact which precludes the entry of judgment for the

---

4. The employee who qualified as a supervisor in *Durham Life* was part of a three person group who decided to instruct the plaintiff's direct supervisor to remove her from her office and initiate a lawsuit against her. *Durham Life,* 166 F.3d at 154.

5. EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment

by Supervisors (6/18/99), EEOC Compliance Manual (BNA) N:4075 (Binder 3); (www.eeoc.gov/docs/harassment.html).

6. *Glickstein v. Neshaminy School District,* 1999 WL 58578, *12–13 (E.D.Pa. Jan.26, 1999)(Hutton, J.)(*quoting Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1034 (7th Cir.1998)).

moving party on this issue. Plaintiff, however, has not shown that Mr. Wentzel had authority to hire, fire, re-assign, or demote her or set her work schedule or pay rate, or that Mr. Wentzel had the power to take tangible employment action against her or affect her daily work activities. Given that plaintiff has failed to point to evidence in the record to show the existence of a genuine issue of material fact, the court concludes that plaintiff has failed to carry her burden of proof of showing that Mr. Wentzel was her supervisor.

### 4. Defendant's liability for conduct that occurred before January 2, 1996 at the Kutztown Post Office

■ Because Mr. Wentzel was plaintiff's co-worker, and not her supervisor, defendant is liable for Mr. Wentzel's conduct in creating a hostile environment only if it "knew or should have known of the harassment and failed to take prompt remedial action." *Kunin,* 175 F.3d at 293 (citation omitted).

Defendant claims that it first learned of Mr. Wentzel's sexual advances toward plaintiff on January 2, 1996, when plaintiff called the Postmaster for the Kutztown Post Office. (Def.'s Mem., Ex. 4, p. 1). The next day, the Postmaster met with plaintiff. (Def.'s Mem., Ex. 4, p. 1–2). At the conclusion of this meeting, the Postmaster advised plaintiff that she would not be forced to have any further contact with Mr. Wentzel until the postal authorities could conduct an investigation of her allegations. (Def.'s Mem., Ex. 4, p. 2). On January 26, 1996, upon completion of the investigation, the Postmaster issued a notice of suspension to Mr. Wentzel for sexually harassing plaintiff and took care that the schedules of plaintiff and Mr. Wentzel provided that they would not both be physically in the building at the same time. (Def.'s Mem., Ex. 6, 7). Thereafter, plaintiff applied for and was permitted to transfer from the Kutztown Post Office to another post office in the same position as she held in Kutztown. (Pl.'s Compl., ¶ 25).

The court concludes that suspending the offending individual, taking specific steps to ensure that he would not come in contact with plaintiff at the post office, and later agreeing to plaintiff's request for a voluntary transfer to another post office is conduct "reasonably calculated to prevent further harassment." *Bonenberger,* 132 F.3d at 26 (citation omitted). Therefore, the court also concludes that defendant took "prompt remedial action" to stop Mr. Wentzel from sexually harassing plaintiff.

### 5. Defendant's liability for conduct that occurred after January 2, 1996 at the Kutztown Post Office

Plaintiff contends both that Mr. Wentzel continued to harass her after January 2, 1996, when she first reported the matter to the Kutztown Postmaster, and that the postal authorities took no action in response to her complaints. (Pl.'s Aff., p. 3). Plaintiff's proof of a post-January 2, 1996 hostile work environment consists of three episodes of intimidation by Mr. Wentzel: (1) a confrontation between Mr. Wentzel's son, an unidentified man, both of whom were presumably acting at Mr. Wentzel's direction, and plaintiff while plaintiff was delivering mail and during which the unidentified man raised his fist in anger toward plaintiff; (2) Mr. Wentzel's telephone call to the Kutztown Post Office apparently to learn why plaintiff's car was parked in the post office parking lot; and (3) finding tire marks leading to every mailbox along plaintiff's mail route which she deduced were made by Mr. Wentzel in an attempt to let plaintiff "know that he had been there, by driving the route before [her]." (Pl.'s Aff., p. 2). Plaintiff reported these incidents to the postal authorities, but contends that the postal authorities took no action. (Pl.'s Aff., p. 3).

In analyzing defendant's liability for a hostile work environment, the court must first determine whether plaintiff was the victim of sexual harassment after January 2, 1996. It is axiomatic that an employer can not be said to have known or should have known about sexual harassment and taken prompt remedial action unless sexual harassment actually occurred. In other words, an employer is not liable under

Title VII for failing to take prompt remedial action to stop offensive conduct by a co-worker if the complaint made, while styled as one for sexual harassment and even if perceived by the complainant to be one of sexual harassment, concerns conduct that was not motivated by the complainant's sex. The Third Circuit has instructed that plaintiff has the burden of showing that her sex was a substantial factor in the discrimination and that if she had been a male, she would not have been treated in a similar manner. *Andrews*, 895 F.2d at 1485 (citations omitted). The court noted that while sexual overtones are not necessary to show discrimination because of plaintiff's sex, the offending conduct must nonetheless be motivated by her sex. *Durham Life*, 166 F.3d at 148 (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir.1996)).

 In this case, plaintiff points to no evidence in the record which shows that the post-January 2, 1996 conduct, even if true, was motivated by plaintiff's sex. In other words, plaintiff is simply *presuming* that because Mr. Wentzel had harassed her in the past because of her sex, every subsequent incident between her and Mr. Wentzel was necessarily similarly motivated by her sex.[7] However, not every friction in the workplace between a man and a woman supports a claim of sexual harassment. Nor does Title VII enact a general labor code which addresses all forms of disputes between co-workers. Thus, the court will not adopt plaintiff's "presumption" that because Mr. Wentzel had previously harassed her sexually, all subsequent incidents between Mr. Wentzel and her were similarly and necessarily animated by plaintiff's sex. While plaintiff may have been understandably disconcerted by these incidents and may have reason to complain against Mr. Wentzel in other fora and under other statutes, plaintiff has offered

no evidence that Mr. Wentzel's post-January 2, 1996 conduct was motivated by plaintiff's sex, and therefore that she faced intentional discrimination "because of her sex." *Andrews*, 895 F.2d at 1482.

### 6. *Defendant's liability for conduct that occurred at the Hamburg Post Office*

 Plaintiff's allegations of a hostile work environment at the Hamburg Post Office, where she was transferred after January 27, 1996 at her request, are likewise not sufficient to constitute sexual harassment. Plaintiff claims that in her presence, co-workers used statements such as "they better watch what they say or they might get in trouble for sexual harassment." (Pl.'s Aff., p. 3). Further, plaintiff claims she was "treated like an outcast" and was generally ignored by her co-workers. (Pl.'s Aff., p. 3). Plaintiff proffers no evidence that the treatment to which she was subjected at the Hamburg Post Office by her co-workers was sexually offensive or that it was motivated by her sex. *Durham Life*, 166 F.3d at 148 (citation omitted).

Thus, the court concludes that there exists no genuine issue of material fact as to whether defendant took prompt remedial action to stop sexual harassment occurring before January 2, 1996 or whether post-January 2, 1996 conducted was motivated by plaintiff's sex.

### IV. CONCLUSION

In conclusion, because defendant has established that it is entitled to judgment as a matter of law on plaintiff's hostile environment claim, its motion will be granted.

---

**7.** Just as reasonable an assumption is that in his post-January 2, 1996 conduct, Mr. Wentzel was motivated by a desire to retaliate against plaintiff, not because of her sex, but because of her having reported his earlier conduct to the postal authorities leading to

his suspension. The court, however, is not free to decide which version of the facts to believe at this point. Rather, the issue is whether under plaintiff's version of the facts, she has shown that Mr. Wentzel's conduct was motivated by her sex.