Dwayne JACKSON, Plaintiff,

v.

**T & N VAN SERVICE,**
et al., Defendants.

No. CIV A–99–1267.

United States District Court,
E.D. Pennsylvania.

March 9, 2000.

### MEMORANDUM

KELLY, District Judge.

On November 4, 1998 at 6:30 p.m., Plaintiff Dwayne Jackson, an African American employee of Defendant T & N Van Service ("T & N"), arrived at a First Union facility at 401 Market Street to assist other T & N employees, Defendants Joseph Larose, Walter Felton and Christopher Larosa, in preparing pallets of items to be moved on the Concourse Level of the parking facility. While working, Plaintiff was grabbed from behind by Larose, who forced the loop of a hangman's noose over Plaintiff's

head. Larose then hollered "skin him!" to Defendants Felton and Larosa, who smiled and laughed. Plaintiff was able to remove the noose and reported the incident to T & N supervisors and the police.[1]

Defendant T & N Van Service terminated Larose, Felton, and Larosa, subject to Union proceedings for reinstatement. As a result of the Union grievance hearing, Felton and Larosa were reinstated with back pay; however, Larose remained terminated.

Plaintiff has been on an unpaid leave of absence since November 10, 1998. T & N has suggested to Plaintiff that he return to work, advising that he will be protected against any retaliation from Felton and Larosa and that the company will attempt to minimize his exposure to these two reinstated employees. (Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Ex. I, Letter from Betley to Krasner of 12/29/98, at 1.) However, absent a guarantee of separation from Felton and Larosa, Plaintiff believes that the company's previous failure to protect him from racial attack makes the return to T & N too physically dangerous to attempt and, thus, alleges that he continues to suffer lost wages and income as well as extreme emotional distress. Second Amended Complaint at ¶¶ 42–43.

On March 11, 1999, Plaintiff filed the Complaint in this matter alleging a variety of theories under state and federal laws.[2] Later, in response to Defendant Teamsters Local 676's Motion for a More Definite Statement, Plaintiff amended the Complaint on May 26, 1999. Then, on November 2, 1999, this Court granted Plaintiff's Petition to File a Second Amended Complaint, allowing Plaintiff to add a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") against Defendant T & N Van Service.[3]

Before this Court is Plaintiff's Motion for Partial Summary Judgment on Counts I (42 U.S.C. § 1981), IV (New Jersey Law Against Discrimination) and VIII (Title VII) of his Second Amended Complaint against T & N Van Service, and a Motion for Partial Summary Judgment on behalf of Defendants T & N Van Service, Harry Murphy, Vince Harrington, Don Taddei, Ken Taddei, David Nelson and Russell Taddei, Jr., requesting that this Court rule as a matter of law that Defendants Larose, Felton and Larosa were not Plaintiff's "supervisors," and, thus, liability must be viewed under the test of "co-worker harassment," which requires the plaintiff to show that the company knew or should have known of the harassment and failed to take prompt remedial action. *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289 (3d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999). For the following reasons, Plaintiff's Motion for Partial Summary Judgment will be denied and Defendants' Motion for Partial Summary Judgment will be granted.[4]

### STANDARD OF REVIEW

"Summary judgment is appropriate when, after considering the evidence in the

---

1. On November 9, 1999, Mr. Larose was found guilty in a Common Pleas Court criminal jury trial of felony ethnic intimidation and simple assault in the attack on Mr. Jackson.

2. Plaintiff's claims include the following: Count I–42 U.S.C. § 1981 against all defendants, Count II–Civil Conspiracy under 42 U.S.C. § 1985(3) against all defendants, Count III–42 U.S.C. § 1986 against Defendants Murphy, Harrington and T & N Van Service, Count IV–Violations of the New Jersey Law Against Discrimination ("NJLAD") against all defendants, Count V–Assault & Batter against Defendants Larose, Felton and Larosa, Count VI–Intentional Infliction of Emotional Distress against Defendants Larose, Felton, Larosa and T & N Van Services, and Count VII–Negligent Supervision against T & N Van Service.

3. Plaintiff has mistakenly identified the Civil Rights Act of 1991 in the allegations listed under Count VIII of his Second Amended Complaint. Second Am.Compl., ¶ 94.

4. Plaintiff correctly points out that Defendants' Motion may be more properly viewed as a motion *in limine.*

light most favorable to the nonmoving party, no genuine issue of material fact remains in dispute and 'the moving party is entitled to judgment as a matter of law.'" *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 267 (3d Cir.1991) (citations omitted). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact.[5] *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Once the moving party has produced evidence in support of summary judgment, the nonmovant must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates there is a genuine issue of fact for trial. *Id.* at 1362–63. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

Plaintiff first contends that T & N Van Service is vicariously liable for the racially harassing actions of its employees, Larose, Felton and Larosa. According to Plaintiff, Larose was acting within the scope of his employment in perpetrating the attack on Mr. Jackson, and T & N is directly liable for that action. Second, Plaintiff asserts that, even assuming arguendo that Larose was acting outside of the scope of his employment with T & N in attacking Mr.

Jackson, he was at least "aided by the agency relationship" and the attack was a "tangible adverse employment action" to which T & N may offer no defense. Plaintiff alternatively argues that if there is no "tangible adverse employment action," but T & N's employees were "aided by the agency relationship," an employer may offer the affirmative defense, but T & N cannot do so in this case.

Defendants respond that a threshold issue presented by Plaintiff's Motion is whether Defendants Larose, Felton and Larosa were supervisors or co-employees. This distinction is important because the standards of liability for employers are different depending on whether a supervisor or co-employee harasses the victim. *Glickstein v. Neshaminy School District,* No. CIV. A. 96–6236, 1999 WL 58578, *11 (E.D.Pa. Jan.26, 1999). Before examining whether the alleged harassers in the instant action are supervisors or co-employees, it is helpful to review the employer liability analysis set forth in the recent Supreme Court decisions *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

If the person charged with creating the hostile environment is the plaintiff's supervisor with immediate (or successively higher) authority over the employee, the employer will be ultimately liable for the supervisor's conduct, provided that the supervisor acted within the scope of the employment. *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 150 (3d Cir.1999). "Acts fall within the scope of employment when they are of the kind [a servant] is employed to perform, occurring substantially within the authorized time and space limits, and actuated, at least in part, by a purpose to serve the master." *Id.* (inter-

---

**5.** "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Professional Baseball Clubs,* 995 F.Supp. 554, 561 n. 14 (E.D.Pa.) (citations omitted), *aff'd,* 172 F.3d 40 (3d Cir.1998).

nal quotations omitted). Harassment by a supervisor, however, generally does not fall within the scope of employment.[6] *Id.* (citing *Ellerth,* 524 U.S. at 757, 118 S.Ct. 2257).

■ "In cases of harassment falling outside the scope of employment ... the employer could be vicariously liable when the 'tortious conduct is made possible or facilitated by the existence of the actual agency relationship.'" *Id.* (citing *Faragher,* 118 S.Ct. at 2290). Under this "aided by the agency relationship test," an employer is liable for a supervisor's harassment of an employee if the employee suffered a tangible employment action. More specifically, the Court adopted the following holding:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defendant employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275.[7] By contrast, if the alleged harasser

**6.** Assuming, arguendo, that Larose was Plaintiff's "supervisor," Plaintiff has argued to no avail that Larose was acting within the scope of his employment when he placed a noose around Plaintiff's neck. In support of his position, Plaintiff cites *Durham Life* in which the Third Circuit recognized the great difficulty in analyzing that case on scope of employment grounds in the absence of a specific finding by the district court about the harassers' intent to serve their employer's interests, and, thus, opted to evaluate Evans' claim under the more specifically delineated standards of the "aided by the agency relation test." 166 F.3d at 151. Here, Plaintiff merely notes that evidence in the instant case suggests that T & N's owners themselves held racist views, allowing a jury to reasonably find that Larose believed his racial attack on Mr. Jackson to be in the service of his employer's goals to keep black employees in their place or otherwise satisfy the owners' own racist impulses. (Pl.'s Mot. at 10 n. 5.) For purposes of summary judgment, however, Plaintiff has not provided this Court with sufficient evidence to find, as a matter of law, that Larose was aware of the owners' alleged racist views and that his intent in putting the noose around Jackson's neck was to serve T & N's interests.

**7.** In applying the "aided by the agency relationship test," Plaintiff contends that Larose, as a supervisor acting outside of the scope of his employment, performed a "tangible adverse employment action" to which T & N may offer no defense. As described above, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. According to Plaintiff, the noose incident qualifies as a tangible employment action because the harassment has led to his constructive discharge, as he has not returned to work based on T & N's inability to reassure him that he would be separated and protected from Larosa and Felton. However, "[a] supervisor can only take a tangible adverse employment action because of the authority delegated by the employer ... and thus the employer is properly charged with the consequences of that delegation." *Durham Life,* 166 F.3d at 152 (citing *Ellerth,* 524 U.S. at 762, 118 S.Ct. 2257). Here, Plaintiff has presented no evidence to support a finding that the noose incident was only able to take place because of the authority given to Jackson's harassers by T & N. See *Ellerth,* 524 U.S. at 761–62 ("When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation."). Accordingly, this Court concludes that the harassment complained of does not amount to a tangible employment action as set forth by the Supreme Court.

is the claimant's co-worker, and not a supervisor, the employer is liable only where it knew or should have known of the harassment and failed to take prompt remedial action.[8] *Kent v. Henderson,* 77 F.Supp.2d 628, 632 (E.D.Pa.1999) (citing *Kunin,* 175 F.3d at 293). Thus, this Court must determine whether Larose, Felton and Larosa were Plaintiff's supervisors or co-employees for purposes of imputing liability to T & N.

Although the Supreme Court has not specifically defined the term supervisor for purposes of determining an employer's liability for a hostile work environment, the Court has described the power to supervise as "to hire and fire, and to set work schedules and pay rates." *Faragher,* 524 U.S. at 803, 118 S.Ct. 2275; *see also Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1034 (7th Cir.1998) (essence of supervisory status is authority to affect terms and conditions of victim's employment, including power to hire, fire, demote, promote, transfer, or discipline employee); *Gentner v. Cheyney University of Pennsylvania,* No. CIV. A. 94–7443, 1999 WL 820864, *18 (E.D.Pa. Oct.14, 1999) (charging jury to consider same factors in determining whether individual was plaintiff's supervisor); *Glickstein* 1999 WL 58578 at *12–13 (finding same factors to be the essence of supervisory status); *Kent,* 77 F.Supp.2d at 633 (same).

Plaintiff has the burden of proof to show that Larose, Felton and Larosa were his supervisors. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990). In this regard, Plaintiff has set forth the testimony of witnesses who indicated their understanding of T & N's work rule that less senior employees must obey the directive of more senior employees. (Pl.'s Summ. J. Mot. at 5, citing Taddei Dep., Ex. G., dated 11/2/99 at pp. 9–10.) Thus, Plaintiff contends that Larose, Felton and Larosa had actual or apparent authority to direct Plaintiff's activities and the fact that

they could not exercise every aspect of supervisory authority over Mr. Jackson will not defeat a finding that they are supervisors for purposes of finding T & N vicariously liable. (Pl.'s Reply Brief at 4.)

Despite Plaintiff's contrary position, Defendants are correct in that "the limited ability of employees to direct the work of crews or other small groups of workers does not equate to a supervisory position" for purposes of imputing liability to the employer. (Defs.' Opp'n Mem. at 40–41.) As demonstrated below, "[c]ases subsequent to *Faragher* and *Ellerth,* indicate that whether an individual is 'a supervisor with immediate (or successively higher) authority' is dependent upon whether his authority was of *a substantial magnitude.*" *Parkins,* 163 F.3d at 1034 (emphasis added).

In *Parkins,* a truck driver brought a Title VII action against her former employer alleging hostile environment sexual harassment and retaliation. The district court granted summary judgment for the employer because it promptly remedied any harassment and because the plaintiff failed to establish a prima facie case of retaliation. On appeal, the Seventh Circuit Court of Appeals found that neither harasser was a supervisor for purposes of imposing strict liability on the employer under Title VII. In doing so the appellate court made the important distinction between low-level supervisors (who are equivalent to co-employees for purposes of Title VII) and "true supervisors," those who are entrusted with actual supervisory powers (power to hire, fire, demote, promote, transfer, or discipline an employee). 163 F.3d at 1033–34. Because there was no evidence that either alleged harasser enjoyed more than minimal authority, and exercised almost no control over truck drivers, the Seventh Circuit held that liability for the purported harassment had to be determined according to the standard for co-employees. *Id.* at 1035.

---

**8.** "Prompt remedial action' is conduct 'reasonably calculated to prevent further harass-

ment.' " *Kent,* 77 F.Supp.2d at 632 (citations omitted).

Likewise, in *Kent*, a female United States Postal Service employee brought a claim of sex discrimination against the Postmaster General under Title VII and The Pennsylvania Human Relations Act ("PHRA"). In granting the defendant's motion for summary judgment on plaintiff's hostile environment claim, the court found that the plaintiff had failed to carry her burden of proof of showing that the alleged harasser, Mr. Wentzel, was her supervisor. 77 F.Supp.2d at 633–34. The record in that case showed that Wentzel was not authorized to hire or fire or recommend hiring or firing. *Id.* at 633. Furthermore, the plaintiff admitted that her supervisor was another individual and made references to Wentzel as an employee in her affidavit as well as in earlier testimony before an administrative judge. *Id.* Accordingly, the court held that Mr. Wentzel was the plaintiff's co-worker, and not her supervisor, making the defendant liable for Mr. Wentzel's conduct in creating a hostile environment only if it knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 634.

Finally, in *Mikels v. City of Durham*, 183 F.3d 323 (4th Cir.1999), a former police office sued the City of Durham under Title VII and 42 U.S.C. § 1983, alleging hostile environment sexual harassment after a higher ranking officer, Corporal Acker, had made unwelcome sexually suggestive bodily contact with her. The United States District Court for the Middle District of North Carolina entered summary judgment for the City. On appeal, the Fourth Circuit held that the City took prompt and adequate remedial measures to relieve it of liability under Title VII. In concluding that a remand to allow attempted proof of aided-by-agency-relation vicarious liability was not warranted, the appellate court found that it was evident from the record that any authority possessed by the alleged harasser over Mikels was at best minimal, involving occasional authority to direct her operational conduct while on duty, and did not include the power to take tangible employment actions. 183 F.3d at 334. Also, the plaintiff in that case operated under the stated understanding that her direct "supervisor" was her squad-leader sergeant, who was accessible to the plaintiff without going through Corporal Acker. *Id.* Furthermore, the Fourth Circuit described the plaintiff's reaction to the harassment, a profanity-laced outburst followed by the filing of a formal grievance, as coming from "one who thinks of her harasser as merely a fellow-employee from whose unwelcome conduct she is free to walk away or whom she can 'tell where to go.'" *Id.* Such conduct "demonstrated [the] lack of any sense of special vulnerability or defenselessness deriving from whatever authority Acker's corporal rank conferred." *Id.*

In the instant action, Plaintiff merely asserts that Larose, Felton and Larosa were in the chain of command above him and, thus, were able to direct his actions. (Pl.'s Mot., Ex. G., R. Taddei Dep., dated 11/02/99, at 9–10.) However, as Defendant T & N points out, the evidence of record supports a finding that neither Larose, Felton nor Larosa was Plaintiff's supervisor for purposes of imputing liability to T & N. Rather, Plaintiff has consistently identified Harry Murphy as his immediate supervisor. (Pl.'s Mot., Ex. A at 10; Ex. J, Jackson Dep., dated 10/27/99, at 176; Defs.' Opp'n Brief, Ex. E, R. Taddei, Jr. Aff. at ¶ 14.) In this regard, the record shows that Plaintiff went to Murphy upon arriving at the First Union work site to receive instructions as to where to report, and Plaintiff testified that Murphy was the one who assigned him to the garage to work with Larose, Felton and Larosa. *Id.* Furthermore, as in *Mikels*, Plaintiff's angry response to having the noose placed over his neck, confronting Larose with the words "What the f—is your problem!?" and walking away to report the noose incident to Murphy, illustrates that he did not consider Larose his supervisor. (Defs.' Opp'n Brief, Ex. F, Jackson Dep., dated 10/27/99, at 179–184.)

Moreover, T & N convincingly argues that Larose, Felton and Larosa had no supervisory title or position, they had no role in setting Plaintiff's work schedule, rate of pay or assignment, they did not evaluate Plaintiff's job performance, they could not discipline Plaintiff, and they could not exert an influence on any change in employment status, such as hiring, firing, promotion, demotion, or reassignment to a job with significantly different responsibilities. (Defs.' Ex. E, R. Taddei, Jr. Aff. at ¶ 4.) Based on the above, this Court concludes that the alleged harassers in this case, Larose, Felton and Larosa, were co-employees of Plaintiff for purposes of imputing liability to Defendant T & N Van Service.

Plaintiff asserts that "[e]ven applying a co-worker standard of harassment, a reasonable jury could find that T & N is liable for a racially hostile work environment." (Pl.'s Resp. to Defs.' Mot. for Partial Summ. J. at 12.) As discussed above, "liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Kunin*, 175 F.3d at 293–94. Here, Plaintiff contends that T & N management knew or should have known prior to November 4, 1998, that certain of its employees were capable of, and in fact did act, in racially intimidating ways toward black employees in the workforce.[9] *See Harley v. McCoach*, 928 F.Supp. 533, 540 (E.D.Pa. 1996) (employer must take prompt remedial action *when the hostile environment is discovered*, rather than wait until employee makes a complaint, to avoid liability).

Defendants have indicated that they will establish that Plaintiff cannot meet his burden of prior knowledge of racial harassment by Joe Larose toward the Plaintiff, or that T & N failed to take prompt and adequate remedial action. Because Defendants have been granted an extension of time in which to file dispositive motions, this Court will defer ruling further on this matter until all parties have been given an opportunity to fully brief the issues at hand.

Based on the above, Plaintiff Dwayne Jackson's Motion for Partial Summary Judgment against Defendant T & N Van Service on Counts I (42 U.S.C. § 1981), IV (New Jersey Law Against Discrimination) and VIII (Title VII) of his Second Amended Complaint based on his harassers acts as supervisors is denied. In addition, Defendants' Motion requesting that this Court rule as a matter of law that Defendants Larose, Felton and Larosa were not Plaintiff's "supervisors," and that employer liability be viewed under the test of "co-worker harassment" is granted.

---

**9.** Plaintiff sets forth in his responsive brief evidence of incidents of racial harassment that took place prior to the November 4, 1998 noose incident, including (1) the circumstances surrounding a charge of hostile environment made by another T & N African American employee, Dan Gainey, (2) testimony about the use of racial slurs by T & N owners Dave Nelson and Don Taddei, (3) prior racial attacks by white T & N employees, and (4) declarations of white T & N employees that T & N supervisors repeatedly used racial slurs. (Pl.'s Summ. J. Resp. at 12–18.)