**Donna DOUGHERTY,**

v.

**William J. HENDERSON, Postmaster General, United States Postal Service.**

No. CIV.A. 99–5978.

United States District Court,
E.D. Pennsylvania.

March 28, 2001.

Steven A. Cotlar, Doylestown, PA, for Donna M. Dougherty.

Donna M. Dougherty, Eddystone, PA, pro se.

James G. Sheehan, Barbara Rowland, U.S. Attorney's Office, Philadelphia, PA, for William J. Henderson.

## MEMORANDUM

DuBOIS, District Judge.

### I. INTRODUCTION

On December 9, 1999, plaintiff filed a *pro se* Complaint against the defendant alleging that the Postal Service did not act upon allegations of co-worker sexual harassment. Following appointment of counsel, plaintiff filed an Amended Complaint on January 21, 2000, alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1981a. On April 27, 2000, the Court denied Defendant's Motion to Dismiss, or,

in the Alternative, for Summary Judgment, without prejudice. The defendant was granted leave to file a second motion for summary judgment after the completion of discovery.

Presently before the Court is the Defendant's Motion for Summary Judgment with supporting affidavits and exhibits (Document No. 15, filed Aug. 31, 2000), Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment with supporting exhibits (Document No. 17, filed Sept. 21, 2000), Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Document No. 18, filed Sept. 27, 2000) and Supplement to Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Document No. 19, filed Sept. 29, 2000). For the reasons set forth below, the Motion for Summary Judgment will be granted, and judgment will be entered in favor of the defendant.

## II. FACTS

This case stems from allegations of sexual harassment which occurred while the plaintiff was working for the United States Postal Service. In 1985, plaintiff began working for the Postal Service as a letter carrier. Dep. of Donna M. Dougherty, July 26, 2000 ("Ex.D–A"), p. 25. In 1995, after sustaining a shoulder injury on the job, she was assigned to permanent limited duty as a clerk in the visitor registration room, alternatively called the access room, located on the first floor in the main lobby of the Philadelphia Processing and Distribution Center, also referred to as the 30th Street Station facility. The access room is described as being very small, like a small box, approximately 12 feet by 10 feet in dimensions. Dep. of Karen Sudyka–Weinberg, Aug. 8, 2000 ("Ex.P–A"), pp. 11–13.

Plaintiff's duties in the access room involved distributing temporary badges to fellow employees who did not have permanent badges. She shared those duties with, among others, Anita Alexander, a coworker. Ex. D–A, pp. 28–31; Ex. P–A, pp. 9–10. During the period in which the harassment was alleged to have occurred, the access room was under the supervision of a supervisor trainee, officially classified as a 204–B Supervisor, Karen Sudyka. Ex. P–A, p. 6.

In March 1998, Joseph Engram was assigned to work with plaintiff and Ms. Alexander in the access room. Engram had previously been suspended for 13 months for threatening another supervisor, and had been described by management as having a problem with supervision. Dep. of Joseph Engram, Aug. 8, 2000 ("Ex.D–B"), pp. 36–47; Ex. P–A, pp. 16–17.

Plaintiff testified that from May 11, 1998 through May 25, 1998, Mr. Engram would solicit her attention by singing and would then proceed to rub his crotch while smiling at her. Ex. D–A, pp. 108–09. According to plaintiff, Mr. Engram would rub his crotch for a few seconds—the "time it would take [her] to turn, look, and look away." Ex D–A, p. 109. Mr. Engram denied engaging in the conduct alleged by plaintiff. Ex. D–B, pp. 48–49. Ms. Alexander also denied witnessing this conduct. Dep. of Anita Alexander, Aug. 8, 2000 ("Ex.D–C"), p. 17.

Plaintiff and Mr. Engram worked together three days each week. Ex. D–A, p. 153. On May 25, 1998, plaintiff told Ms. Sudyka about Mr. Engram's actions, stating that "the thought of having to work with him was making me physically and emotionally sick." Ex. D–A, p. 115. In response, Ms. Sudyka reassigned both plaintiff and Mr. Engram to different positions. Plaintiff was not reassigned until June 1, 1998 because plaintiff and Mr.

Engram were not scheduled to work together until that date. Ms. Sudyka asked a male supervisor to speak with Mr. Engram about plaintiff's complaint. According to Mr. Engram, the male supervisor told him he had been accused by plaintiff of rubbing his stomach in her presence. Ex. D–B, p. 48.

On June 1, 1998, there was a confrontation between plaintiff and Mr. Engram about which plaintiff testified that Mr. Engram pointed his finger directly in her face and stated that plaintiff was making claims of sexual harassment because plaintiff "wanted him." Ex. D–A, pp. 120–21. During this incident, Ms. Sudyka was present and asked plaintiff to prepare a written statement. Ex. D–A, pp. 121–22. Ms. Sudyka testified that she separated plaintiff and Mr. Engram, but Ms. Sudyka did not talk to Mr. Engram at the time "because I was told that there was a sexual harassment committee, that I would just take Donna's statement and that was … all I was told to do." Ex. P–A, pp. 27–28. Plaintiff testified "Once I make this letter, they [Ms. Sudyka and Ms. Parrot] said 'this kind of makes it official,' or something." Ex. P–A, pp. 122.

Rhonda Parrot, a senior manager, subsequently interviewed plaintiff, Mr. Engram, Ms. Alexander and others and initiated an investigated that was conducted by Edward Lugo, an Employee Assistance Counselor. Defendant asserts that the investigation ended without any findings because there were no corroborating witnesses to Mr. Engram's alleged harassing conduct. On the subject of witnesses, although Ms. Alexander denied seeing Mr. Engram harass plaintiff, Officer Fetko testified she told him she might have seen Mr. Engram grab his crotch. Dep. of Officer Michael J. Fetko, Aug. 8, 2000 ("Ex.P–B"), Attach. F1, pp. 2–3.

According to Officer Fetko, when he told Ms. Sudyka that Ms. Alexander told him she had seen Mr. Engram grab his crotch, "She understood what I was saying, but she told me that it was no longer in her hands, that the matter had been taken to a different level." Ex. P–B, p. 11. On November 2, 1998, Officer Fetko, at the request of Ernestine Jenkins who worked in Employee Assistance, submitted a written report covering Ms. Alexander's statements. That ended his involvement in the investigation. Ex. P–B, pp. 11–13. When Ms. Sudyka was asked whether she knew whether the investigation ended or whether there were any written findings, she testified that she did not know. Ex. P–A, p. 38. Plaintiff testified that after giving her statement, she was never contacted by Mr. Lugo. Ex. D–A, p. 142.

Between June 1, 1998 and June 22, 1998, when plaintiff left the Postal Service on disability, she testified that Engram "was stalking me." Ex. P–A, p. 149–50. Although he was assigned to another floor, "he found a way every day at least once to be around, or for me to see him, or to be at the door." Ex. P–A, pp. 149–52. Those incidents "were enough to send me over the edge." Ex. P–A, p. 153.

Plaintiff wrote to a Senior Equal Employment Opportunity Complaints official, Processing Specialist, Alexander Branch, on October 22, 1998, regarding her allegations of harassment by Mr. Engram. Ex. D–A, p. 88; Letter from plaintiff to Alexander Branch, Oct. 22, 1998 ("Ex.D–D"). On May 26, 1999, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") about the harassment. EEO Complaint of Discrimination in the Postal Service, May 26, 1999 ("Ex.D–F"); Decl. of Robinn A. Reed, ¶ 6. On September 9, 1999, the EEOC dismissed her complaint as untimely, saying she failed to contact an Equal Employ-

ment Opportunity ("EEO") counselor within 45 days of the alleged harassment. Dismissal of Formal EEO Complaint, Sept. 9, 1999, Case No. 1–C–191–0031–99 ("Ex.D–H"); Decl. of Robinn A. Reed, ¶ 7.

### III. STANDARD OF REVIEW

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (citing *Anderson* and *Celotex Corp.*).

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). On the other hand, if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

### IV. DISCUSSION

In its Motion for Summary Judgment, defendant raises two main arguments—that plaintiff did not exhaust her administrative remedies and has shown no equitable reason why the exhaustion requirement should be tolled, and that plaintiff's hostile work environment claim is not a cognizable Title VII cause of action. Those arguments will be addressed in turn.

### A. Failure to Exhaust Administrative Remedies

#### 1. *Exhaustion Within 45–Day Period*

 "It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir.1997). The exclusive remedy for employees of the United States Postal Service who allege discrimination in the workplace is Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. Plaintiff's § 1981 claim for workplace discrimination is analyzed under the same framework as Title VII. *See Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (1997). Pursuant to regulations issued under Title VII, "[a]n aggrieved person must initiate

contact with a[EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory...." 29 C.F.R. § 1614.105(a)(1) (1998).

■ It is undisputed that plaintiff left the Postal Service on disability on June 22, 1998 and that she did not contact an EEO counselor until October 22, 1998, 122 days later. Defendant asserts that since plaintiff did not contact an EEO counselor within 45 days of the alleged discrimination, the harassment by Mr. Engram, defendant must prevail on summary judgment. Plaintiff asserts that a cause of action against an employer for sexual harassment by a fellow employee arises only after the employee has complained of the condition to a supervisor and the employer has had a reasonable time to conduct an investigation and provide remediation, and therefore there is no statute of limitations problem. According to plaintiff, in a situation where there is a discriminatory failure to promote, hire or a discriminatory discharge, the harm occurs when the employer takes the discriminatory action, whereas when there is co-worker harassment, the harm occurs when the employer fails to take corrective action, rather than when the fellow employee engages in sexual harassment.

Plaintiff's legal argument is novel and without support in the case law. Plaintiff neither cites, nor has the Court found, any case law to support her position. Further, § 1614.105(a)(1) explicitly states that "an aggrieved person must initiate contact with [an EEO] Counselor within 45 days" of the alleged discrimination. The discrimination alleged by plaintiff in her Amended Complaint cannot have occurred any later than June 22, 1998, the date she left the Postal Service on disability. It is clear that plaintiff did not initiate contact with an EEO Counselor in a timely manner, and therefore, unless the statutory period can be equitably tolled, her claim must fail.

2. *Equitable Tolling*

The Court next turns to the question of whether the plaintiff is entitled to equitable tolling of the 45–day limitations period. The 45–day time limit shall be extended

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter ... occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2) (1998).

The Third Circuit has ruled that this 45–day time period may be equitably tolled "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Robinson,* 107 F.3d at 1022 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir.1994)).

Plaintiff argues that all of the three equitable tolling exceptions are applicable to her case and that, to defeat the motion, she need only present evidence from which a jury could reasonably believe that any one of the three circumstances occurred. That is the correct standard, but the Court concludes that plaintiff has failed to meet her burden on summary judgment.

a. *Plaintiff Was Not Actively Mislead*

■ Plaintiff argues that there is sufficient evidence from which a jury could

reasonably believe that she was actively mislead by the defendant. Construing the evidence in the light most favorable to the plaintiff, the Court concludes that no reasonable finder of fact could conclude that plaintiff was actively mislead by the defendant. Plaintiff was required to file a complaint with an EEO counselor within 45 days of the claimed harassment. She presented evidence that she spoke to her Postal Service supervisor during the 45 day period, but that action does not satisfy the requirement of Title VII that plaintiff notify an EEO counselor within 45 days unless she was actively mislead.

In *Robinson v. Dalton*, 107 F.3d 1018 (3d Cir.1997), the Third Circuit held that there were no grounds for equitable tolling where an employee of the Philadelphia Naval Shipyard said that he talked to an EEO counselor over the telephone, and that counselor told him he did not have to file a separate complaint because of his pending claims of retaliation.[1] *Id.* at 1023. Further, the Circuit noted that the plaintiff in *Robinson* was "not inexperienced in the procedures required to maintain a discrimination complaint, having already filed three such complaints." *Id.*

None of the testimony to which plaintiff points supports a claim that she was mislead about filing her EEO complaint. Nothing in the cited deposition testimony suggests that the Postal Service mislead plaintiff into believing that she did not have an EEO action, or that their investigation was part of an EEO action. In fact, on June 9, 1998, plaintiff signed a declaration for use by the Postal Service in its investigation of her sexual harassment complaint which said "I understand that this declaration will be used as part on an internal management investigation and

that this investigation is not being conducted as part of the Equal Employment Opportunity (EEO) process which is a separate and distinct procedure." Attachment to Supplement to Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Document No. 19). Significantly, plaintiff never alleged that she was told, or that she thought, the management investigation was a substitute for an EEO action, or that the investigation precluded her from bringing such an action.

Furthermore, the evidence establishes that plaintiff knew the procedure for filing an EEO complaint at the time of the alleged harassment. On May 12, 1998, one day after Mr. Engram allegedly began harassing her, plaintiff made an initial contact to the EEO Complaints Processing Office alleging race discrimination because an African–American employee received a locker, and she did not. EEO Case File, Case No. 1–C–191–0167–98 ("Ex.D–M"); Ex. D–A, pp. 89–91; Decl. of Robinn A. Reed, ¶ 8. On that same date, she also received a booklet entitled "What You Need to Know About EEO." Ex. D–M, p. E–5 (signed receipt for book); Ex. D–A, p. 94. At that time, she learned, if she did now already know, the location of the EEO office. *Id.* In addition, plaintiff initiated a sexual harassment complaint against another supervisor in 1987, which was subsequently dismissed. Decl. of Robinn A. Reed, ¶ 9 (declaring matter was designated as Agency Case No. 2–A–000–0072–87).

Based on the foregoing undisputed evidence, the Court concludes that plaintiff knew how to file a complaint with the EEOC at the time at issue. She has not produced evidence sufficient to enable a

---

1. The Court notes that although *Robinson* was decided under the "extraordinary way" prong, because that plaintiff was mislead by an EEO counselor rather than his employer, it is an example of what is not considered misleading.

reasonable fact finder to determine that she was mislead by the defendant.

### b. *Plaintiff Did Not Timely Assert Her Rights in the Wrong Forum*

■ Plaintiff alleges that the same evidence she offered to show she was actively mislead by management also establishes the third ground for equitable tolling—that she asserted her rights in the wrong forum. The Court disagrees. Plaintiff's knowledge of the EEO system, and the document she signed on June 1, 1998, belie the claim that she timely asserted her claim in the wrong forum. Therefore, the Court will turn to the remaining ground for equitable tolling, that plaintiff was prevented, in some extraordinary way, from asserting her rights.

### c. *Plaintiff Was Not Prevented From Asserting Her Rights in an Extraordinary Way*

Plaintiff claims that for three months after June 22, 1998, the date plaintiff left the Postal Service, she was so mentally ill as a result of the harassment she was unable to pursue her claim. She asserts that this mental illness prevented her from asserting her legal rights during that time period, and therefore, the limitations period should be tolled.

In the case at issue, in claiming that she was totally mentally disabled for at least three months after the harassment occurred and was thus unable to assert her legal rights, plaintiff raises two issues: (1) does the decision of the Hearing Representative, Office of Workers' Compensation Programs (Case no. A03–236889) collaterally estop defendant from asserting that she was not totally mentally disabled; and (2) is there evidence of disability sufficient to toll the 45–day period. Because the Court finds that plaintiff has met her burden under the summary judgment

standard with respect to the sufficiency of evidence, the Court need not reach the issue of collateral estoppel.

■ To toll a statute of limitations for mental illness, plaintiff's illness must prevent her "from managing [her] affairs and from understanding and acting on [her] legal rights." *Powell v. Independence Blue Cross, Inc.*, 1997 WL 137198, *5 (E.D.Pa. Mar.26, 1997) (citing *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996)). Case law instructs that plaintiff has a high bar to meet to make such a claim. For example, one circuit held that equitable tolling is appropriate where a plaintiff was diagnosed as a "paranoid schizophrenic" and suffered from auditory hallucinations and discursive, illogical, circumlocutional thought patterns. *See Nunnally v. MacCausland*, 996 F.2d 1, 6 (1st Cir.1993).

On the other hand, another court held that the 45–day limitations period was not tolled by evidence that an IRS employee was "extremely upset and distraught," "ashamed" and "feeling completely insane" after being raped and impregnated by a co-worker, and, at the same time, consulted with an attorney about issues of paternity, child custody, and support payments, the court ruled the 45–day limitations period was not tolled. *Temparali v. Rubin*, 1997 WL 361019 (E.D.Pa. June 20, 1997).

Likewise, a court ruled there was no tolling of the 300–day period for filing EEOC charges where the court was presented with evidence that plaintiff was placed on disability after his psychologist concluded he had a mental or emotional condition that required treatment, was never hospitalized, wrote several letters to supervisors threatening legal action, traveled on public transportation requiring two transfers, paid household bills, and submitted a claim for Social Security disability benefits. *Powell*, 1997 WL 137198 at *5–6. Considering that evidence, the court held

that plaintiff failed to present evidence from which one could reasonably conclude he had a mental condition that prevented him from managing his affairs and bringing a law suit. *Id.* *See also Smith–Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C.Cir.1998) ("high hurdle" for equitable tolling not met where plaintiff did not understand EEO right-to-sue letter and was "traumatized and simply unable to psychologically deal with it" and where plaintiff alleged that she was "unable to go to work and afraid of alleged harasser"); *Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232 (E.D.N.C.1987) (doctor's findings of panic attacks ultimately resulting in plaintiff's hospitalization not sufficient to establish equitable tolling in light of plaintiff's pursuit of EEO claim and lawsuit).

■ Plaintiff argues that the psychiatric report of Wolfram Rieger, M.D., prepared for her workers' compensation claim, demonstrates her mental incapacity because Dr. Rieger found her to have been "totally disabled" for about three months after she left her job at the post office. He diagnosed her with chronic adjustment disorder with anxiety and depression. Letter from Dr. Rieger to Thomas R. Uliase, Esq., June 18, 1999 ("Ex.D–J"). From May to October, 1998, plaintiff said that she had trouble paying her mortgage and her utility bills, and that her boyfriend took care of her, to the point of telling her "when to take [her] medicine." Ex. D–A, pp. 53–65; Dep. of Donna Dougherty, Vol. II, Aug. 8, 2000 ("Ex P–C"), p. 27.

On the other hand, a government psychiatrist, Timothy Michals, M.D., P.C., found that plaintiff had an Adjustment Disorder With Mixed Emotional Features, but "shows no significant impairment of her mental capacity which would have held her from taking care of her own affairs in procuring her legal rights." Letter from Dr. Michals to Barbara Rowland, Esq.,

July 25, 2000 ("Ex.D–I"). An independent psychiatric evaluation of plaintiff performed in conjunction with her claim for Social Security disability concluded that she has Chronic Adjustment Disorder With Mixed Anxiety and Depressed Mood. Letter from Dr. Doyle to U.S. Dep't of Labor, February 15, 2000 ("Ex.D–K"). PsychResource Associates, plaintiff's mental health practitioners, diagnosed her with Major Depression. PsychResource Associates Treatment Records ("Ex.D–L").

Defendant also presented evidence that after the beginning of the harassment, plaintiff was able to manage her own affairs. On May 12, 1998, one day after plaintiff said the harassment began, she initiated a racial discrimination complaint. On June 9, 1998, plaintiff completed a declaration about the harassment. After June 22, 1998, when plaintiff left her job at the Postal Service, she contacted Postal Service employees regarding the investigation of her complaint against Mr. Engram. Ex. D–A, pp. 159–162. During that same period of time, she also contacted the office of Congressman Brady for assistance in regard to her allegations of sexual harassment. *Id.* On July 20, 1998, plaintiff completed and submitted a claim for workers' compensation with the Postal Service. Ex. D–A, pp. 41–42; Information for Precomplaint Counseling, Case No. 1–C–191–0031–99 ("Ex.D–E"), pp. 8–10. This form contained several pages which required completion by plaintiff, her supervisor, and her doctor. Ex. D–E, pp. 8–10.

Despite all the evidence which favors defendant on this issue, the Court cannot hold that there is no genuine issue of material fact regarding the plaintiff's ability to assert her legal rights. At the summary judgment stage, the Court does not engage in weighing evidence. Plaintiff has presented evidence of mental illness that rendered her unable to manage her affairs

for a period of three months after she left the Postal Service on June 22, 1998. This evidence, while not particularly strong, is enough to raise a genuine issue of material fact as to equitable tolling. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505). Therefore, the Court will turn to plaintiff's hostile work environment claim.

## B. Plaintiff's Hostile Work Environment Claim is Not a Cognizable Title VII Cause of Action

To prove a hostile work environment claim, plaintiff must establish that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *See Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990)). Plaintiff must prove each of these elements, otherwise, her case must be dismissed.

In assessing these elements, a court must look to the totality of the circumstances rather than to conduct on an incident-by-incident basis. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367; *see also Calloway v. E.I. DuPont de Nemours & Co.,* 2000 WL 1251909 (D.Del. Aug.8, 2000).

Defendant does not contend that there are no genuine issues of material fact with regard to some of the hostile work environment factors, such as whether the alleged discrimination was based on plaintiff's sex and whether the discrimination, as opposed to other life events, detrimentally affected her. Defendant argues, however, that there can be no dispute over whether the harassment was serious and pervasive—it was not—and that there can be no finding of respondeat superior liability. The Court will address these arguments in turn.

### 1. *Pervasive and Regular Harassment*

Defendant argues that while the alleged sexually harassing conduct of Mr. Engram was obnoxious and offensive, it did not rise to the level of being pervasive and regular.[2] The courts, in addressing this issue, have held that, to establish a cause of action for hostile work environment under

**2.** The Court notes that the Third Circuit's "pervasive and regular" standard of *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990), differs from the Supreme Court's "severe or pervasive" standard in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Since the Third Circuit has consistently used the "pervasive and regular" standard, the Court will apply this test. *See Bouton v. BMW of N. America, Inc.,* 29 F.3d 103, 106 n. 2 (3d Cir.1994); *Bonenberger v. Plymouth Township,* 132 F.3d 20, 25 (3d Cir.1997) (citing *Andrews* ). In doing so, the Court concludes that the distinction is not significant in this case, as the outcome would be the same under either test.

Title VII, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370 (citations and internal quotations omitted).

The Court does not find it necessary to delve into the plethora of cases which describe the various circumstances which create pervasive and regular harassment in the workplace. It is possible that a reasonable finder of fact would find the evidence that Mr. Engram grabbed his crotch repeatedly in front of plaintiff over a period of weeks and the evidence that he stalked her after being transferred to another floor constituted pervasive and regular harassment. However, such analysis is not necessary to a decision on the motion at issue because, as discussed below, the Court finds there was no respondeat superior liability on the part of the Postal Service for the alleged discrimination.

### 2. *Respondeat Superior Liability*

Defendant contends that, because the defendant took prompt remedial action in response to plaintiff's complaint of sexual harassment, there is no respondeat superior liability in this case. The Court agrees with defendant on this issue.

Respondeat superior liability exists in a hostile environment sexual harassment claim if either:

(1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in com-

mission of the tort by the agency relationship.
*Bonenberger v. Plymouth Township*, 132 F.3d 20, 26 (3d Cir.1997) (citing *Bouton v. BMW of N. America, Inc.*, 29 F.3d at 106). Since Mr. Engram was plaintiff's co-worker, and there is no evidence that he had actual or apparent authority over plaintiff, neither the first or third possibilities for liability apply. Therefore, in this case, there can only be respondeat superior liability if the Postal Service knew or should have known of the harassment, and failed to take prompt remedial action. *Id.*

Remedial action will insulate the defendant from liability only if the action was "reasonably calculated to prevent further harassment." *Bonenberger*, 132 F.3d at 26. Such action must be prompt and effective. *See Bouton*, 29 F.3d at 107. When an "employer's response stops harassment, there cannot be Title VII liability." *Kunin v. Sears Roebuck & Co.*, 175 F.3d at 294 (citing *Bouton*, 29 F.3d at 110 ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective.")).

If a person makes a complaint, the investigation need not be perfect. Rather, an employer is only liable for hostile work environment sexual harassment if the "remedial action taken subsequent to the investigation is also lacking." *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997). For example, in *Knabe*, while the plaintiff's employer was unable to make a finding that harassment occurred, or to discipline the alleged harasser because there was no corroborating evidence, since adequate remedial action was taken, no liability was found. *See id.* at 413. In that case, the alleged harasser, a restaurant manager, was warned about the company's sexual harassment policy, told to restore plaintiff, a waitress, to the work schedule, and the plaintiff was provided

with contacts should the harassment reoccur. *See id.*

Further, the Third Circuit has held that "punitive action against the harassing employee ... is not necessary to insulate the employer from liability for a hostile work environment." *Id.* at 414. So long as the remedy chosen by the employer is adequate to stop the harassment, an aggrieved employee cannot object to the selected remedy. *See id.*

■ When plaintiff told her supervisor about the alleged harassment on May 25, 1998, Ms. Sudyka took prompt remedial action. Immediately, she transferred Mr. Engram to another area, and a male supervisor spoke to Mr. Engram. Mr. Engram testified that the male supervisor told him that plaintiff had complained that he was rubbing his stomach; however, Mr. Engram was soon told that he had been accused of sexual harassment. Ex. D–B, pp. 48–49.

After a confrontation with Mr. Engram in front of her supervisor, on June 1, 1998, while plaintiff was still working in the access room, plaintiff was sent to Ms. Parrott, the senior manager on duty. Ex. D–A, pp. 120–24. Ms. Parrott told plaintiff that she took her allegations seriously and would initiate an investigation, and she did so. *Id.* pp. 147–48. She moved Mr. Engram to the fourth floor and plaintiff to the box area on the first floor, in an area close to Ms. Sudyka. In her new position, instead of handing badges to employees, plaintiff handed boxes to customers. Ms. Parrott also instructed plaintiff and Mr. Engram to stay away from each other, and plaintiff was assigned an employee assistance counselor, Ernestine Jenkins, to whom she could talk about her emotional state. *Id.,* pp. 138–39.

In her investigation, Ms. Parrott interviewed Mr. Engram, Ms. Sudyka, and Ms. Alexander, a co-worker, but was unable to confirm plaintiff's allegations. Decl. of Rhonda Parrott, ¶¶ 8–12. On June 1, 1998, Edward Lugo, an Employee Assistance Counselor, was asked by management to investigate plaintiff's allegations of sexual harassment. His investigation disclosed no corroborating witnesses to substantiate plaintiff's charges, and no disciplinary action was taken against Mr. Engram. Decl. of Edward Lugo, ¶¶ 5–7.

After plaintiff and Mr. Engram were separated, they had no further prolonged interaction, although plaintiff believed Mr. Engram was stalking her after they were separated. She said that on the days she worked between June 1 and June 22, Mr. Engram found a way to see her every day. However, during that time, he never said anything to plaintiff other than "hello," nor did he rub his crotch in front of her.

Plaintiff also testified that before she complained to her supervisor, Ms. Sudyka, on May 25, 1998, Ms. Sudyka would, when plaintiff would walk over to her, say "Having trouble with Joe again?" Ex. D–A, pp. 106–07. Since there is no evidence before the Court which could lead to a conclusion that the defendant would have had any indication that any such "trouble" was sexual harassment, rather than two employees not getting along, Ms. Sudyka's statements, by themselves, cannot serve as notice of sexual harassment. *See Kunin,* 175 F.3d at 294–95.

Plaintiff also presented evidence that Mr. Engram stalked her after they were separated. She testified that Mr. Lee, a supervisor had to send Mr. Engram away "a couple of times." According to plaintiff, on the day she went to receive her final paycheck, Ms. Sudyka told her "we just had to chase Joe out of here. He was down here again." Ex. D–A, pp. 149–152. The evidence presented by plaintiff on this issue does not support the claim that the

Postal Service turned a blind eye to the alleged stalking. Rather, it demonstrates that the Postal Service tried to keep plaintiff and Mr. Engram apart.

Plaintiff presented no evidence that she complained to the Postal Service about the stalking. If plaintiff did not alert the defendant, the Postal Service cannot have had notice, unless the stalking was so pervasive and open that a reasonable employer would have had to be aware of it. *See Kunin*, 175 F.3d at 294. In analyzing whether the defendant knew or should have been aware of the stalking without notice by plaintiff, the Court notes the short time frame in which it could have occurred, from June 1, when plaintiff and Mr. Engram were separated, to June 22, when plaintiff left the Postal Service. Further, it is clear from the record that plaintiff and Mr. Engram did not work together every day during these three weeks; instead, they interacted only on days when their shifts overlapped. Thus, because of the short time period, the type of interaction, and the limited extent of the interaction, the Court concludes the stalking was not pervasive, and there was no constructive notice to the defendant about any stalking. *See Kunin*, 175 F.3d at 295 (finding no constructive notice when, over a three week period where shifts did not overlap on ever day worked, and because the harassment was personal comments to plaintiff when management was not around).

The Court concludes that defendant took prompt, remedial action, and therefore rejects plaintiff's argument the no such action was taken. After hearing plaintiff's allegations, defendant took steps to separate plaintiff and Mr. Engram. Defendant also promptly initiated an investigation into the accusations, which determined that the accusations could not be corroborated.

## IV. CONCLUSION

Plaintiff has failed to present evidence of respondeat superior liability, the fifth factor in the *Andrews* test. Thus, her sexual harassment claim must fail, and the Court will grant defendant's Motion for Summary Judgment, and enter judgment in favor of defendant.

### *ORDER*

**AND NOW,** this 28th day of March, 2001, upon consideration of Defendant's Motion for Summary Judgment with supporting affidavits and exhibits (Document No. 15, filed Aug. 31, 2000), Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment with supporting exhibits (Document No. 17, filed Sept. 21, 2000), Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Document No. 18, filed Sept. 27, 2000) and Supplement to Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Document No. 19, filed Sept. 29, 2000), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that defendant William J. Henderson's Motion for Summary Judgment is **GRANTED** and **JUDGMENT IS ENTERED** in favor of defendant William J. Henderson and against plaintiff Donna Dougherty.