

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2003

# Reynolds v. USX Corp

Precedential or Non-Precedential: Non-Precedential

Docket 01-3941

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Reynolds v. USX Corp" (2003). *2003 Decisions*. Paper 880.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/880

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3941

DEBORAH REYNOLDS

v.

USX CORPORATION,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-05507
(Honorable Marvin Katz)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2002
Before:  SCIRICA, ALITO and McKEE, Circuit Judges

(Filed January 15, 2003)

OPINION OF THE COURT

SCIRICA, Circuit Judge.

USX Corporation appeals from an order denying its motion for judgment as a matter

of law under Federal Rule of Civil Procedure 50(a).  We will affirm.

**I.**

Plaintiff Deborah Reynolds, an African-American female, was hired in 1988 by defendant USX. From 1990 until her final day on the job, July 17, 1998, Reynolds worked in the cold reduction department of the defendant's steel mill. She was a member of the United Steel Worker's Union of America and was paid at an hourly rate. In October 1995, Reynolds filed her first allegation of racial and gender discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Reynolds subsequently filed two more complaints with the EEOC and PHRC in 1997 and 1998. The complaints charged USX with discriminatory treatment on the basis of Reynolds' race and gender, in addition to retaliation for her previous filings with the EEOC and PHRC. All of the allegations in Reynolds' agency complaints were eventually dismissed.

Reynolds' civil complaint alleged violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to 2000e-17 (amended 1991) ("Title VII"), and the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, §§ 951-963 (amended 1991) ("PHRA").[1] At trial, the jury found in favor of USX on Reynolds' claims of retaliation and racial and gender discrimination. But the jury awarded Reynolds $70,000 in compensatory

---

[1]Employer liability under the PHRA follows the standard applied under Title VII. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000) (citation omitted). Therefore, we must only review the record under the Title VII standard.

damages on her hostile work environment claim. After denying USX's Rule 50(a) motion, the District Court ordered USX to pay Reynolds $54,853.50 for attorney's fees.

On appeal, USX contends the adverse jury verdict should be overturned because: (1) the evidence was insufficient as a matter of law to establish a hostile work environment claim; (2) the alleged offensive epithets were made by fellow union employees, therefore Reynolds did not establish respondeat superior liability; and (3) Reynolds failed to notify a member of USX's management of the epithets as required by its sexual harassment policy. With respect to the award of attorney's fees, USX contends that the lodestar amount should be reduced to reflect the failure of Reynolds' claims for retaliation and discrimination.

## II.

We review whether the District Court erred as a matter of law under a plenary standard, while viewing the evidence in the light most favorable to Reynolds. *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 n.4 (3d Cir. 1999) (citing *Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143, 149 (3d Cir. 1998)). The central question is whether there was "insufficient evidence from which a jury reasonably could find liability." *Kunin*, 175 F.3d at 293 n.4 (internal quotation marks omitted).

A claim for hostile work environment consists of five elements: (1) intentional discrimination on the basis of race or gender; (2) pervasive and regular discrimination; (3) detrimental effect to the plaintiff; (4) detrimental effect to a reasonable person of the same race or gender in the same position; and (5) respondeat superior liability. *Id.* at 293 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)).

3

USX contends that Reynolds did not satisfy the fourth element of the *Andrews* test because the conduct to which she was exposed was not objectively hostile. The salient indicia of proof by which the fourth element is measured "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Viewing the disputed facts in the light most favorable to Reynolds, we cannot conclude that the jury acted unreasonably. Reynolds began recording what had been said and done to her in a personal journal in January 1995. By July 1998, Reynolds recorded having been called a "bitch" at least six times by various union "team leaders" under whom she worked in the steel mill. Reynolds' co-worker testified that on one occasion Reynolds' team leader referred to her as a "dumb black bitch." Another co-worker corroborated Reynolds' allegation of continuous verbal hostility testifying that she heard team leaders call Reynolds "the N word, the C word [and] the B word." Reynolds offered evidence that she was taunted with nude pictures from a men's magazine. Finally, Reynolds testified that she was repeatedly disciplined and denied training opportunities by team leaders and members of USX's management on account of racial or gender animus. In view of this evidence, the jury verdict was not unreasonable. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996) (observing that "a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled ... because of crabbed notions of relevance or excessive mistrust of juries") (citation and internal quotation marks omitted).

4

USX also contends that Reynolds did not established respondeat superior liability because the team leaders were co-workers, not supervisors. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 802 (1998) (holding that an employer can be held vicariously liable for harassing conduct of a supervisor "made possible by the abuse of his supervisory authority"). USX correctly observes that team leaders are, like Reynolds, union employees who earn an hourly wage and lack the authority to formally discipline another union employee. Reynolds, however, testified that members of management as well as team leaders were sometimes present when co-workers told her, among other things, that "women don't belong in the mill." Reynolds also presented evidence that members of management took tangible adverse employment actions against her by changing her work assignments, denying her training opportunities, issuing her disciplinary suspensions and ultimately issuing her a disciplinary discharge. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998) (recognizing that every Federal Court of Appeals has imposed vicarious liability where "a discriminatory act results in a tangible employment action"); *Cardenas v. Massey*, 269 F.3d 251, 267 n.10 (3d Cir. 2001) (defining a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits") (citation and internal quotation marks omitted). Thus, we cannot say that no reasonable juror could have determined that management knew or should have known about the environment of gender based hostility on the steel mill floor. *Ellerth*, 524 U.S. at 759 (providing that an employer is negligent if it knew or should

5

have known of sexual harassment and failed to stop it). We hold Reynolds presented sufficient evidence for a jury to find respondeat superior liability. The supervisory status of the team leaders is an issue which we need not decide.

USX's final argument rests upon Reynolds' failure to avail herself of its sexual harassment policy. But this affirmative defense is no longer at USX's disposal because it fired Reynolds. *See Faragher*, 524 U.S. at 808 (holding that no affirmative defense is available "when the supervisor's harassment culminates in a tangible employment action, such as discharge"). Accordingly, we will affirm the order of the District Court denying USX's Rule 50(a) motion.

## III.

USX also challenges the amount of attorney's fees awarded to Reynolds under 42 U.S.C. § 2000e-5(k) (granting discretion to district courts to award reasonable attorney's fees to prevailing party under this subchapter). We review the reasonableness of the award for abuse of discretion. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990) (citation omitted).

USX contends the lodestar amount of Reynolds' attorney's fees award should be reduced to reflect the failure of her claims of discrimination and retaliation. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the plaintiff was deemed to have "prevailed" for purposes of an attorney's fees award under 42 U.S.C. § 2000e-5(k), yet he did not prevail in each of his individual claims for relief. According to the Supreme Court, there are two inquiries relevant to adjusting the lodestar amount: "First, did the plaintiff fail to prevail on claims

6

that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id*. at 434. In situations where "the plaintiff's claims for relief involve a common core of facts or will be based on related legal theories," the district court should compare the overall relief to the hours reasonably expended by the attorney on the litigation. *Id*. at 435. In this case, the District Court expressly found that the circumstances and evidence relating to Reynolds' claims of intentional discrimination were relevant to her successful hostile work environment claim. Therefore, the order awarding Reynolds attorney's fees in the amount of $54,853.50 will be affirmed.

## IV.

Because the evidence on the record is sufficient to allow a reasonable juror to find in favor of Reynolds' hostile work environment claim, we will affirm the denial of USX's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). In addition, we will affirm the District Court's award of reasonable attorney's fees.

---

TO THE CLERK:

Please file the foregoing opinion.

7

/s/   Anthony J. Scirica
Circuit Judge